IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Janie R. Walton, | ) | Civil Action No. 8:10-884-HFF-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed a claim for DIB on October 27, 2006, alleging disability as of July 31, 2006.  [R. 96–98.]  The claim was initially denied on December 13, 2006 [R. 47, 49–53] and was denied on reconsideration by the Social Security Administration ("the Administration") on March 7, 2007 [R. 48, 58–60].  Plaintiff timely filed a request for hearing, and on March 19, 2009, Administrative Law Judge ("ALJ") William F. Pope held a hearing on Plaintiff's claim.  [R. 20–46.]

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

On May 22, 2009, the ALJ issued his decision that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act ("the Act").  [R. 5–19.]  Following his review of the evidence, the ALJ found Plaintiff had severe impairments including pain in the lumbar spine and left lower extremity and anxiety [R. 10, Finding 3], but Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (part A) [R. 11, Finding 4].  The ALJ also found Plaintiff retained the residual functional capacity to perform work with restrictions limiting Plaintiff to simple, routine work; no lifting or carrying over twenty pounds occasionally and ten pounds frequently; no standing and/or walking over six hours in an eight-hour workday; only occasional stooping, twisting, crouching, and climbing of stairs or ramps; no climbing of ladders or scaffolds; no work involving foot pedals or other controls with the lower left extremity; and avoidance of hazards such as unprotected heights and dangerous machinery.  [R. 11, Finding 5.]  With these restrictions, the ALJ found that Plaintiff was unable to perform any past relevant work [R. 17, Finding 6], but jobs existed in significant numbers in the national economy Plaintiff could perform [R. 17, Finding 10].

On February 26, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision.  [R. 1–4; 20 C.F.R. § 404.981.]  Plaintiff filed this action for judicial review on April 9, 2010.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ failed to (1) properly analyze the treating and evaluating physician opinions pursuant to 20 C.F.R. § 404.1527(d)(1)–(6) and Social Security

2

Regulation ("SSR") 96-5p and (2) properly assess Plaintiff's credibility and subjective allegations of disabling pain.  The Commissioner responds that the ALJ reasonably discounted the medical opinions of record because they were (1) inconsistent with the objective medical evidence and with Plaintiff's activities of daily living ("ADLs") and (2) influenced by Plaintiff's self-limiting behaviors.  The Commissioner also contends the ALJ reasonably discounted Plaintiff's subjective statements regarding extreme limitations in functioning because Plaintiff's allegations were inconsistent with the objective medical evidence, her ADLs, and her conservative treatment.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

4

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2] With remand under sentence

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

6

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment

7

prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1574, 404.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). When determining whether a claimant's

physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

**C.      *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 404.1520(f); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).   To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[3] Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e).

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a (2001); *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell*, 699 F.2d at 187). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

**IV.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v.*

13

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig,* 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id*.

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*,

829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR 88-13 ), Titles II and XVI: Evaluation of Pain and Other Symptoms:
> 
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

15

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the credibility finding must be obvious from the record. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weighing of Treating Physician's Opinion**

Plaintiff argues the ALJ improperly weighed the opinion of Plaintiff's treating physician, Randall G. Drye, M.D., giving the physician's opinion little weight even though there is evidence that fully supports the physician's assessment.  The Court disagrees.

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178).  While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Finally, the ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity.  20 C.F.R. § 1527(e).

Here, the ALJ properly evaluated the opinion of Dr. Drye and substantial evidence supports the ALJ's determination that Dr. Drye's opinion is entitled to "little weight." The ALJ explained that he discounted the limitations on Plaintiff's capacity imposed by Dr. Drye because the limitations were not supported by (1) Dr. Drye's own clinical or laboratory findings; (2) the findings of other physicians; or (3) Plaintiff's reported activities of daily living. [R. 18.]

Dr. Drye opined Plaintiff had a 25% whole person impairment with a 33% impairment of the lumbar spine, requiring permanent limitations of alternating sitting and standing frequently; avoiding lifting, pushing, or pulling greater than ten to fifteen pounds; and avoiding stairs, stooping, or repeated bending. [R. 270.] However, Dr. Drye's records, as well as those of Drs. Rawl, Beveridge, and Cable, indicated Plaintiff's exams produced unremarkable results despite the symptoms she experienced.[5] [R. 209, 271–72; *see also* R. 267–68 (Dr. Rawl); R. 330–31 (Dr. Beveridge); R. 349–51 (Dr. Cable).] Moreover, Dr. Rawl noted there was an absence of true physical findings of weakness, wasting, or motor dysfunction [R. 268], and Dr. Drye noted Plaintiff's straight leg raise tests were normal [R. 271], reflexes were symmetric [R. 272], and distal motor and sensory exams were normal [R. 272]. A nerve study by Dr. Wolf showed normal EMG/NCS in Plaintiff's lower left extremity. [R. 273.] Further, Plaintiff's counsel admitted at the hearing before the ALJ that there was no other objective medical evidence to substantiate Plaintiff's reports of continued pain; the only evidence was continued doctor's visits and unspecified

---

[5] Additionally, in the same report in which he stated Plaintiff's limitations, Dr. Drye also noted that pain management could "lessen [Plaintiff's] level of disability." [R. 270.]

"comments" from Hitchcock Healthcare, an occupational health group, for which there were no specific records.  [R. 37–38.]

In weighing Dr. Drye's opinion, the ALJ considered Dr. Drye's opinion and medical records, as well as the opinions and records of other treating physicians.  [R. 11–16.] Specifically, the ALJ found persuasive Dr. Drye's January 2007 studies confirming no evidence of recurrent herniation or nerve root impingement [R. 12]; the functional capacity evaluation that noted Plaintiff's inconsistent performance was due to her self-limiting behaviors and influenced the outcome of the evaluation—that Plaintiff was limited to sedentary work [R. 12; *see also* R. 303–05]; Dr. Rawl's EMG/nerve study, which showed no evidence of radiculopathy or herniation [R. 13; *see also* R. 266–67]; and Dr. Rawl's indication that there was an absence of true physical findings of weakness, wasting, motor dysfunction, dysesthesia, or sensory dysfunction [R. 13; *see also* R. 266–67.]  The ALJ also noted his conclusion was supported by the assessments of the two state agency physicians, Drs. Van Slooten and Crosby, who reviewed the record and projected that, within twelve months of the alleged onset of disability, Plaintiff would be capable of performing the exertional demands of light to medium work—including sitting, standing, and walking for up to six hours each in an eight-hour day, with normal breaks—with additional restrictions on postural activities.  [R. 18; *see also* R. 240–47, 255–62.]

In addition to the ALJ's reasons for discounting Dr. Drye's opinion, no other treating or examining physician who saw Plaintiff following her August 2006 surgery imposed limitations as severe as Dr. Drye's, which supports the ALJ's decision to give Dr. Drye's opinion limited weight.  *See* 20 C.F.R. § 404.1527(d) (stating that the ALJ's evaluation of physician opinions involves consideration of factors such as supportability and consistency

19

with other evidence). Further, while Plaintiff argues the ALJ focused on certain evidence

to the exclusion of evidence showing she suffered from disabling pain, "[i]t is not within the

province of a reviewing court to determine the weight of the evidence, nor is the court's

function to substitute its judgment for that of the [Commissioner] if his decision is supported

by substantial evidence."[6]    *Hays v. Sullivan*, 907 F.2d 1453, 1456 (citing *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). The Court finds the ALJ properly evaluated

and explained how he weighed Dr. Drye's opinion pursuant to 20 C.F.R. § 404.1527, and

therefore, the ALJ's decision is supported by substantial evidence.

**Evaluation of Plaintiff's Credibility**

Plaintiff contends the ALJ failed to properly assess Plaintiff's credibility and

subjective allegations of disabling pain. The Court disagrees.

The ALJ is required to make credibility determinations about allegations of pain or

other nonexertional disabilities, and "such decisions must refer specifically to the evidence

informing the ALJ's conclusions." *Hammond,* 765 F.2d at 426. "If an individual's

statements about pain or other symptoms are not substantiated by the objective medical

evidence, the adjudicator must consider all of the evidence in the case record, including

any statements by the individual and other persons concerning the individual's symptoms."

---

[6] Even were the Court to fully credit Plaintiff's arguments that the record contains evidence supporting Plaintiff's position, the Court cannot reverse and remand unless Plaintiff has demonstrated that the ALJ's decision is not supported by substantial evidence. *See Craig*, 76 F.3d at 589 (stating that where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court); *Edwards*, 937 F.2d at 584 n.3 (stating that if the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision); *see also Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (stating that it is the claimant's burden to prove she is disabled). Here, the Court finds the ALJ's decision as to the weight assigned to Dr. Drye's opinion is supported by substantial evidence; therefore, the Court has no basis on which to reverse and remand this issue.

SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,485 (July 2, 1996); *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2).   If he rejects a claimant's testimony about her pain or physical condition, the ALJ must explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence.  *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir.1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)).   "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."   SSR 96-7p.

Here, the ALJ gave specific reasons for his finding that Plaintiff was not entirely credible, and the ALJ's reasons are supported by substantial evidence.  The ALJ found that, although the evidence supported some degree of back pain, Plaintiff's allegations as to the intensity of her pain and the limitations she experienced as a result thereof were not credible.  [R. 15.]  The ALJ discounted Plaintiff's credibility because (1) Plaintiff's activities of daily living were inconsistent with her alleged degree of pain and functional limitation; (2) the objective medical evidence did not support Plaintiff's complaints; (3) there were inconsistencies in Plaintiff's functional capacity evaluation, which influenced the outcome of the exam and which Dr. Drye described as "worrisome"; (4) Dr. Berveridge reported Plaintiff's exam results were "amazingly unremarkable" given the symptoms she alleged; (5) an exam by Dr. Cable demonstrated Plaintiff was malingering; and (6) Plaintiff had not required frequent emergency room treatment, frequent hospitalization, or further surgery. [R. 14–15.]  Because of the extent of the ALJ's reasoning on this issue, the Court finds the

21

ALJ provided ample and substantially supported reasons for discounting Plaintiff's claims of disabling pain, and therefore, the ALJ did not err in his credibility determination.[7]

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 24, 2011
Greenville, South Carolina

---

[7] Plaintiff also argues that the ALJ ignored her work history in contravention of SSR 96-7p, which indicates that work history and efforts to work must be considered in the evaluation of credibility, but Plaintiff fails to explain how this alleged error is harmful error.  There is no indication in the record that Plaintiff ever desired to return to work.  In fact, Plaintiff's worker's compensation caseworker noted there was light duty work available for Plaintiff but Plaintiff disagreed.  [R. 208.]  Based on the above, the Court finds the ALJ has set forth specific credibility findings that are supported by substantial evidence.

22